ALBERT SCHILLING, Respondent, v. CARL TOWNSHIP, a Political Subdivision of Grant County, North Dakota, Appellant.

(235 N. W. 126.)

Opinion filed January 5, 1931.  Rehearing denied February 27, 1931.

*Jacobsen & Murray,* for appellant.

*C. Liebert Crum,* for respondent.

BURR, J. The plaintiff brought action against the township to recover compensation for private property taken and damaged in the laying out of a road. The facts necessary to a proper understanding of the case will be stated later. The jury returned a verdict for the plaintiff in the sum of $400 and from the judgment entered thereunder the defendant appeals.

There are nineteen specifications of error which, with various subdivisions, present some thirty-two propositions; but, as stated by the appellant himself:

"Appellant's contentions when boiled down resolve themselves into the following major propositions:

"1. That the defendant as a matter of law is not liable for the cause of action set out in the complaint, or the cause of action testified to by the witnesses and shown by the testimony.

"2. That the road was on the land when the plaintiff purchased same; that the only one who sustained any damages, if any, was the original owner of the land, namely, the owner at the time such road was constructed; that such owner has never assigned its or his cause of action for same to the assignors who assigned to the plaintiff.

"3. That the defendant's officers did not commit the trespass; that if anyone committed a trespass it was the board of county commissioners of Grant County.

"4. That the alleged cause of action is barred by the statute of limitations.

"5. That there is no competent evidence establishing any damages under the pleadings.

"6. No verified claim presented to the board.

"7. Reversible error in the court's ruling on the testimony and the defendant's motions, and in the court's instructions."

The complaint alleges that:

"The said defendant . . . did wrongfully and unlawfully . . . and as naked trespassers, enter upon the said above described real estate and did take possession of a strip of said land 66 feet in width and

extending direct from the quarter corner of the south line of said section to the quarter corner of the north line of said section, and did assume to establish a public highway across the center of the tillable land of said section . . . and did grade a public highway entirely across said section; . . . that he has been and will be put to a great inconvenience . . . that the road or highway actually occupies eight acres of said tillable land and forms a barrier between the east and west portions of said section. That by reason of the building of said road as aforesaid, it will be necessary for the plaintiff to build and maintain two miles of fence, etc.; that he presented to the defendant a duly certified claim in the sum of $800· covering said damage."

He says further that he was not the owner of the land at the time the road was established but that the then owner assigned to him the interest which he had in the cause of action, and that he now owns "the entire cause of action stated."

The answer contains a general denial and then alleges:

"That on or about the month of May, 1921, the defendant, pursuant to statute in said case made and provided, duly and legally condemned and laid out as a public highway along the quarter section line in the section designated in paragraph three of the complaint; that said proceedings were all due, legal and regular and in compliance with the statute, and that pursuant thereto damages were then and there paid by the township to the defendant owner and possessor of said land, which were accepted by said owner, and possessor in full settlement thereof."

The answer further alleges that:

"The plaintiff granted and conveyed to the defendant the right to establish a highway as aforementioned and that said highway was placed on said land in accordance with specific instructions and request of the then owner of said land and that the then owner of said land waived all claims for damages thereto by reason of such road."

There are allegations of the claim being barred by the statute of limitations and that the township is not subject to suit.

Whatever criticism may be levelled at some of the terms used in the complaint it is clear the action is not one for closing a road, nor enjoining the use; but for compensation for private property taken and for private property damaged by the township in its attempt to open

and maintain a road. The complaint asks merely for a money judgment for an amount specified, with costs, though plaintiff does include in his prayer a request for "all further necessary proper relief." The township rests its case distinctly on its power to condemn land for road purposes, and its alleged compliance with the law regulatory thereof.

The pleadings dispose of any issue as to the laying out of the road by the township, and these allegations are amply sustained by whatever testimony was introduced. The record shows the road is a township road,—the defendant so alleges—though the county graded and furnished assistance in the maintenance. There is no proof whatever of the completion of condemnation proceedings by the township—in fact the proof establishes the contrary, and defendant abandoned this claim. William Jessum, a member of the township board of 1921, testified that no money was paid any one for that road, while he was on the board, and he knew of no conveyance or easement given, and would have known if there had been any. The record shows the township board was anxious to have a mail route established and owing to the topography of the country found it more convenient to run the road through the section than to follow the section lines. Thus it is clear the township took the property, keeps and maintains a road thereon; but has not paid compensation therefor.

The plaintiff did not become the owner until after the road was established. There was some attempt made by the defendant to show that at the time work was commenced on the road the township made settlement with the then owner of the land; but as this testimony was based upon statements made by an alleged agent with no proof of agency and proper objection was made, it has no probative value. The case arises from the act of the township in establishing a road through the land which plaintiff now owns, without paying compensation, and in keeping and maintaining that road thereon. The plaintiff rests his case upon his right to consider the road as established and to recover compensation for the property taken and the property damaged.

Appellant's first contention—that it is immune from liability under the facts of the case—cannot be sustained. The fact remains the township took the land for a road, legally or illegally, and has kept and maintained a road thereon ever since. Private property was in fact taken for a public use. It was taken by a township which had

a right to take it for that purpose. The purpose was legal though the method used was unlawful. True the township acted through its officers but they were attempting to do what they had a right to do—lay out a road—and as shown in Noble Twp. v. Aasen, 8 N. D. 77, 76 N. W. 990:

"When township officers, acting collore officii, perform an act which is entirely within the scope and power of the township to perform, but perform the same in an improper and unlawful manner, such act is, nevertheless, the act of the township."

Appellant says under the cases of Vail v. Amenia, 4 N. D. 239, 59 N. W. 1092 and Anderson v. Board of Education, 49 N. D. 181, 190 N. W. 807, the township cannot be sued; but the distinction between these cases cited and that of Township v. Aason, supra, is clear. In these cases the action is predicated on negligence, but here the township took property it had the right to take, has not paid for it, and being capable of being sued is liable for what it took. In Noble Twp. v. Aasen, supra, the township sought to enjoin the closing of the road and the defendant counterclaimed for damages. As the court points out, the township took private property for a purpose for which it had a right to take such property, it kept the property and refused to pay for it. There is nothing in the law which makes a township immune from suit in such a situation as this.

It is said "that the road was on the land when the plaintiff purchased same," and therefore he has no cause of action. This involves the nature of the taking and the effect of the right of eminent domain referred to later.

The third general proposition advanced by the appellant is that the county took the land, and not the township. The pleadings, evidence and offers of proof dispose of this contention as shown before.

The fourth allegation deals with the statute of limitations. There is no dispute but what some statute of limitation applies to the character of the case presented here. Our law provides, Comp. Laws 1913, § 7363, that "no cause of action . . . founded upon the title to real property . . . shall be effectual, unless it appears that the person prosecuting the action . . . or grantor of such person was seized or possessed of the premises in question within twenty years before the committing of the act in respect to which such action is

prosecuted. . . ." Again in § 7381 the statute says: "An action for relief not hereinbefore provided for must be commenced within ten years after the cause of action shall have accrued." Another subdivision of § 7375 places six years as the limitation for "an action upon a contract, obligation or liability, express or implied. . . ." The defendant argues the case is governed by the provisions of § 7375, subdivision 3 which provides that "an action for trespass upon real property," must be commenced within six years. It becomes necessary therefore to determine just what statute of limitation is applicable to this case, and this depends upon the nature of the proceeding.

A township has the right to take land for road purposes. This road, not being on the section line, it became necessary to acquire the right of way. In this case such proceedings were "under the charge and in the name" of the township. Section 1921, Comp. Laws 1913 (Pol. Code). In this respect the township is acting in a governmental capacity, and is taking private property for public use both by constitutional provisions and statutory law. Such private property cannot "be taken or damaged for public use without just compensation having been first made to, or paid into the court for the owner, and no right of way shall be appropriated to the use of any corporation, other than municipal, until full compensation therefor be first made in money or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived." Const. § 14. See also § 8202, Comp. Laws 1913.

In Martin v. Tyler, 4 N. D. 278, 296, 25 L.R.A. 838, 60 N. W. 392, this court showed the distinction between "just compensation" and "full compensation." As "just compensation" may be paid by a public corporation or an instrumentality of the state by such extensive "benefits" that there is no "excess of damages sustained over benefits received," cases may arise where "just compensation" may be made to the owner without the payment of cash, and therefore there would be nothing to be "paid into court for the owner." But this must be ascertained and settled for before private property can be taken and until this is done the township has no right as against the owner until a prescriptive right has been obtained; except, possibly, the right to claim estoppel to an attempt to close. An instrumentality of the state,

exercising its right, to condemn property for public use, cannot be said to be a trespasser in the same sense in which a private corporation entitled to exercise the right of eminent domain would be a trespasser when the latter goes upon the land of another and attempts to exercise dominion over it without compliance with law, even though the township may not have followed the statutory procedure. "The original and ultimate title to all property, real or personal, within the limits of this state is in the state." Section 8, Comp. Laws 1913 (Pol. Code). The state has not limited itself so as to permit suit against itself for a tort. Section 14 of the Constitution, before quoted, is a limitation on its power to take or damage private property for public use, requiring just compensation to be first made; but a failure to do so does not authorize suit against itself "respecting the title to property, or arising upon contract" (Const. § 22; Comp. Laws 1913, § 8175), and an action in trespass does not lie, nor does it lie against a township. However, though acts of the state or an instrumentality of the state may sound in tort the injured person is not always precluded from recovery. He may proceed as if what would ordinarily be considered to be a tort was waived.

That the act of a city in doing what it had a right to do cannot be said to be a trespass, even though injury is done to real property is upheld in Dayton v. Asheville, 185 N. C. 12, 30 A.L.R. 1186, 115 S. E. 827, and the court holds that in such case if there is liability on the part of the governmental agency, it is because of "a taking or appropriation, in whole or in part, of property for a public use without due compensation." The court says: "The denial of a right to recover against a municipality for an alleged injury upon the theory of its constituting a trespass does not militate against the right of recovery for a taking or appropriating, in whole or in part, of property for a public use without due compensation."

Even where a private company appropriates land, but without committing trespass, such as in a case where it has a right "to enter upon and occupy lands . . . without compensation first made" but title is not obtained, nor claimed except by prescriptive right, it is held in Lehigh Valley R. Co. v. McFarlan, 43 N. J. L. 605, 614, that where the owner brings an action for damages, "the damages recoverable in such action will be the same compensation which is determinable by

the award of commissioners—full compensation for the injury done by the appropriation of the owner's property to the company's use. . . . It will also follow from the substitution of an action by the owner for proceedings to appraise by commissioners, that the owner's action for compensation will not be barred by the statute of limitations, as ordinary actions of trespass or for debts are barred. He may proceed to have his damages appraised by action at any time before a right of title to the property has been acquired by adverse user or possession. Nor will his claim for damages be subject to a presumption of payment, such as is sometimes applied to debts, for until his damages are ascertained by action or by the award of commissioners, there is no debt but a presumption of payment can apply."

If the state does not commit trespass so as to give a right of action for trespass, this rule holding an action by the legal owner to be a substitute for the statutory proceedings for an award should apply.

In Aylmore v. Seattle, 100 Wash. 515, L.R.A.1918E, 131, 171 Pac. 659, 660, the court says:

"We have repeatedly held that a municipality, in taking private property for public use, acts in its sovereign capacity and not as a trespasser. Having the right to take, whatever its procedure or lack of procedure, it is not a wrongdoer."

In this case cited from Washington the court says:

"Although land owner who stands by and allows a municipality to take his property by irregular means and use it for a street may be estopped to sue for recovery of the land, he can still sue for compensation any time before the municipality has acquired title by prescription, and hence Code § 159, sub-div. 1, relating to actions for which provision is not otherwise made, and the period of limitations applicable to actions for the recovery of consequential damages to property not appropriated do not apply."

Subdivision 1 of § 159 of the Washington Code is similar in character to our § 7375, subd. 3; and § 165 of the Washington Code is similar to our § 7381.

The question of compensation for the taking of property can not be said to be distinct and separate and therefore merely for the recovery of money and thus governed by a different rule so far as the limitation of action is concerned.

Even if the plaintiff or his grantor could be said to have acquiesced in the establishment of the road there is nothing to indicate that either did anything which could be construed as a waiver of the right to compensation, unless its acquiescence continued for the statutory period of limitations. See 2 Cooley, Const. Lim. 3rd. ed. 1205. In Kime v. Cass County, 71 Neb. 677, 99 N. W. 546, 8 Ann. Cas. 853, the county had attempted to establish a road and there was no record indicating same had been established as required by law. The county made no attempt to have appraisers appointed to assess the damage and as the court says: "No evidence of any kind appears relating to the appraisement or payment of damages." The road had not been opened for the statutory period necessary to obtain the title by prescription and the court says that under the laws of Nebraska "the county cannot take possession of or use land as a highway without assessing and paying or providing for the payment of damages to the land owner." The court then says: "Because the county has not had the damages appraised and made provision for its payment and because the evidence fails to establish the use of the highway in question for a sufficient length of time to give the county a prescriptive right thereto" the lower court was wrong in dismissing a petition to have the road closed. Evidently the Nebraska court holds that the payment of the compensation is a question which remains open until condemnation proceedings are completed or title gained by prescription for on a rehearing (set forth in 71 Neb. 680, 101 N. W. 2, 8 Ann. Cas. 854) the court shows that as "no damages were appraised or provision made for their payment before or at the time of the attempted establishment of the alleged public road in controversy . . . such action defeated the alleged right to appropriate the land to a public use." The duty is upon the township to take the necessary steps to ascertain the amount of compensation. The Nebraska court said on this rehearing:

"We are of opinion that the spirit, if not the letter, of the Constitution, requires that the public seeking to appropriate private property to its use should, unless damages have been waived by some affirmative and unequivocal act, take steps of its own motion to ascertain their amount and secure their payment, and that mere passive acquiescence by an individual in the appropriation of property, unaccompanied by any conduct indicative of affirmative assent thereto, should not, unless

continued for the statutory period of limitations, be regarded as a waiver of his rights."

Our Constitution (§ 14) uses the term "compensation," not "damages," when referring to a taking such as the one at bar. The gist of the whole proceeding is the exercise of the right of eminent domain, to which the amount of compensation is but an incident. It is true that when the sovereign enters upon and takes private property to which it has no title, "there is an implied promise to make the required compensation" (United States v. Great Falls Mfg. Co. 112 U. S. 645, 28 L. ed. 846, 5 S. Ct. 306), but this presupposes an entry as prescribed by law. Where the sovereign, having a right to enter, does not enter in conformity to law, but the owner waives this feature and treats it as if the law had been followed, with only the question of compensation to be settled, then the law of compensation under eminent domain applies. The Washington court in Aylmore v. Seattle, 100 Wash. 515, L.R.A.1918E, 131, 171 Pac. 659, quotes with approval the following statement found in Lewis on Eminent Domain, 3d ed., § 967, as follows:

"We have seen that, where property is entered upon and appropriated to public use without complying with the law, the owner may waive the tort and sue for his just compensation. The same rule applies where the entry is by consent and the question of compensation is left for future adjustment. In such cases the action for just compensation is not barred, except by adverse possession for the requisite period to establish a title by prescription."

It is just as if condemnation proceedings were begun and not yet completed. As said in State ex rel. McClellan v. Graves, 19 Md. 351, 81 Am. Dec. 639, "condemnation of private property to public use is not complete until the proprietor is paid or tendered the value of his property, as ascertained by the . . . assessment." The Washington court then proceeds to show the reason for this distinction, saying:

"If the right of the owner to recover compensation for property actually taken is barred before the expiration of the prescriptive period, this anomalous situation will result: He will continue to be the owner of the property until he loses his title by adverse possession, yet during the interval he cannot exercise a single act of beneficial ownership or do any act to toll the running of the statute. He will be deprived of

the use and enjoyment of property which belongs to him, both in law and in equity, while the one who has taken it without title either legal or ·equitable can exercise over it every right ordinarily incident to ownership."

The court holds that the period for limitation of action is the period set for adverse possession, which under our statute is twenty years. It will be noticed that this is the period of limitation for obtaining a road by prescriptive right, and thus both are brought into harmony.

This same court makes a distinction, as far as private persons are concerned, between actions for damages to adjoining property from an act done "in the exercise of its power of eminent domain," and actions for compensation because of property taken, by eminent domain. In the former case, being purely for injury, a different statute of limitations applies. In Jacobs v. Seattle, 100 Wash. 524, L.R.A. 1918E, 131, 171 Pac. 662, this distinction is noted, the court applying the statute similar to our § 7375, subd. 1. See also United States v. Lynah, 188 U. S. 445, 47 L. ed. 539, 23 S. Ct. 349. But when private property is taken because of the removal of lateral support, it is "damaged in public use." See Wong Kee Jun v. Seattle, 143 Wash. 479, 52 A.L.R. 625, 255 Pac. 645, and this is made applicable to the taking of real property by a private trespasser. See Price v. Humptulips Driving Co. 127 Wash. 69, 219 Pac. 871. However Minnesota holds such injury is not a "taking" within the provisions of the statute of limitations limiting "recovery of real property" as "neither the title to, nor the possession of any real estate is involved in the action" for damages because of the removal of lateral support but gives rise merely to an implied contract to pay. See Forsythe v. South St. Paul, 177 Minn. 565, 225 N. W. 816.

The supreme court of Utah had occasion to determine a similar proposition, though it was a private corporation which was charged with taking the land. In the case of Salt Lake Invest. Co. v. Oregon Short Line R. Co. 46 Utah, 203, 148 Pac. 439, the plaintiff alleged that the railroad company "without right or authority of law, and without instituting any eminent domain or condemnation proceedings" had taken some of its land in the year 1906. "The defendant, by its answer, admitted entering upon and taking possession of the land for railroad purposes at about the time alleged in the complaint, without the con-

sent of the plaintiff and without the institution of eminent domain or condemnation proceedings; and alleged that it continually and exclusively thereafter occupied, possessed, and used it for such purposes." It then raised the question of the statute of limitations arguing that if this be an action "for waste or trespass of real property," the action must be commenced within three years; or that if it be "an action for relief not hereinbefore provided for" it must be commenced within four years. The defendant stated that the action was one for "compensation for the taking of private property for public use." The court held that in that event the action was not governed by the statute of limitations relative to trespass of real property, or the statutory provisions similar to our § 7381 as neither of these applied to the case. The court held that the action was governed by the statute similar to our § 7363 "requiring actions or defenses founded on realty to be commenced within seven years" being the statutory prescriptive period in Utah. This was an action to recover for compensation and the court says: "Where property is entered upon and appropriated to public use without complying with the law, the owner may waive the tort and sue for his just compensation. In such case the action is not barred, except by adverse possession for the required period, here seven years." It will be noted that this rule is made applicable to private corporations, as does the Washington court, and the court cites numerous cases in support of this position. (See 148 Pac. 441.) This same court makes the distinction that the Washington court makes, between actions for damage in the taking of property and actions for damages to abutting property because of nuisance, in the manner of use and holds that in such cases a different statute of limitations of action applies. See Johnson v. Utah-Idaho C. R. Co. 68 Utah, 309, 249 Pac. 1036.

It is true courts are not unanimous in this matter and in a case of trespass committed by private corporations some courts hold that the trespass being of a permanent nature "all damages past and present are recoverable in one action." And therefore unless brought within the period required for damages by trespass to real property are barred. See Williams v. Southern P. R. Co. 150 Cal. 624, 89 Pac. 599; Wood v. Michigan Air Line R. Co. 90 Mich. 242, 51 N. W. 265. However the New York courts appear to be committed to the view that so long as the trespass continues the owner has a right of action without refer-

ence to the question of the permanency of the trespass, at least until title by prescription is obtained. See Pappenheim v. Metropolitan Elev. R. Co. 128 N. Y. 436, 13 L.R.A. 401, 26 Am. St. Rep. 486, 28 N. E. 518; Mortimer-v. Manhattan R. Co. 129 N. Y. 81, 29 N. E. 5. In these New York cases the question of a statute of limitations does not appear to be raised.

The appellant cites us to the case of Wood v. Michigan Air Line R. Co. 90 Mich. 242, 51 N. W. 265, supra, and Robinson v. Southern California R. Co. 129 Cal. 8, 61 Pac. 947. In the former case it is held "where a railroad company unlawfully enters land, and erects and operates a railroad thereon, the owner, after an action for trespass is barred by limitations, cannot maintain trespass based on the continued holding, since possession in the owner, either actual or constructive, is essential." The action was brought distinctly and avowedly for trespass, and therefore a "continuing trespass" was not permissible when the original trespass was barred. In the California case cited a holding similar to that of Michigan is set forth.

The California court says defendant was therefore a trespasser "as would a natural person under like circumstances, and the ordinary common-law remedies are open to the owner." The owner having permitted the trespass to continue he is barred from commencing an action based upon that trespass. The same court approves this holding in Williams v. Southern P. R. Co. 150 Cal. 624, 89 Pac. 599, cited by the appellant. Both actions are actions in trespass.

In these cases cited by the appellant the private property was taken by private concerns, even though taken for a public use. These private concerns were not instrumentalities of government and therefore could be and were in the position of trespassers. It is true that in the case of Price v. Humptulips Driving Co. 127 Wash. 69, 219 Pac. 871, supra, and Salt Lake Invest. Co. v. Oregon Short Line R. Co. 46 Utah, 203, 148 Pac. 439, supra, this distinction between the public instrumentality and a private company is not drawn, but in the case of Kincaid v. Seattle, 74 Wash. 617, 623, 134 Pac. 504 (rehearing in 74 Wash. 628, 135 Pac. 820) the Washington court says with reference to a taking by a city, "the action for damages for land taken without compensation is usually spoken of, and is in its nature, one of trespass; but it is not strictly so. If the state, or its agent, in the prose-

cution of the public work takes no more than is necessary, and prosecutes its work without negligence, it is neither a trespasser nor a tortfeasor." Again in the same case the court said (p. 620 of 74 Wash., 134 Pac. 504):

"Whatever its method, the city has taken respondent's property for a public use in virtue of its sovereignty, and subject only to the limitations to be found in the constitution. When taking private property for a public use the state acts in its sovereign capacity. . . . It goes not as a trespasser inspired by selfish or unlawful motive, but as one taking without malice and intent to do wrong, and presumptively for the public good. It cannot put on the cloak of a tort-feasor under the statute if it would. It cannot plead a willful wrong to defeat a just claim. . . . Having the right to take, a municipality, whatever its procedure or even lack of procedure, is not a wrongdoer. The remedy of the one whose property is taken is immaterial, so long as it leads to compensation as provided in the Constitution."

The better rule, at least so far as the exercise of the power of eminent domain by the state is concerned, is that the state is not a trespasser in the sense in which a private corporation may be a trespasser; that the duty rests upon the state or its instrumentality, when laying out a road, to have the compensation ascertained as required by statute; that all this is part of the exercise of eminent domain; that this compensation to be ascertained is merely a part of the proceedings and until these proceedings are completed, or until the owner has waived all his rights by permitting the statutory period to elapse whereby title is gained by prescription the question of the amount of compensation remains open, and his action to recover the compensation is merely a substitute for the method which the state is required to follow and has failed to follow.

This is the rule which is applicable to the case at bar. Under our constitution private property cannot be taken for public use without just compensation having been first made. The land belongs to the plaintiff. He needs no separate assignment of the claim. The defendant has undertaken to take property, as it has a right to do. It did not pursue the right course and has no title under condemnation proceedings or prescriptive right. Plaintiff permits it to claim the land, but

until this just compensation is paid or a prescriptive holding of property has matured the action for just compensation can be maintained.

The fifth general proposition will be discussed with the seventh. With reference to the sixth contention, while the general denial raises the issue, it is sufficient to say the record is clear on this matter. Notice of claim was presented to the members of the board and filed with the clerk. Some hypercritical objections were made as to the form of the claim, and the signature attached thereto, etc. The township rejected the claim; but not because of its form or general method or service of notice. It claims to have settled for all damages. It may be there was little time given for action on plaintiff's claim, but there is nothing in the record showing that the board would have acted upon the claim or given it any consideration whatsoever. Its inaction was not based on any such ground. No matter how formally the claim had been presented there is nothing to indicate that any other disposition would have been made of it than was made. It is doubtful if under the facts of this case it was necessary to present a claim at all, or that the provisions of § 4222 of the Code relative to presentation of claim against a township apply. Also it is doubtful whether under the pleadings or proof the defendant is in position to demand compliance with provision of § 1929 of the Code relative to the method of ascertaining damages. The plaintiff could not prevent condemnation proceedings and does not attempt to do so. The township is bound by the Constitution to pay compensation and having taken the land under claim of condemnation, and having failed to follow the procedure for ascertaining damages—giving notice to owner, assessing benefits, etc., —provided for in chapter 31 of the Political Code, it is not in very good position to insist on a reversion to this method of determining compensation when it claims the same has been paid. It is not for the land owner to see that all proper steps in condemnation proceedings are taken, and if the township failed to ascertain damages and assess benefits, but proceeded on the theory this was done, it can scarcely complain as to the manner of demand for compensation.

Much of the objection to the evidence establishing damages is based upon a wrongful theory of the case. Because of reference to trespass made in the complaint the defendant assumes that this is simply an action to recover damages for a trespass which occurred in 1921, and

as if it ceased then. Defendant says: "It is self-evident that this land can be restored to its original condition, namely, by levelling off the road." Plaintiff is not asking this. He is willing to leave the road there but if the presence of the road damages the plaintiff and interferes with his farming of the land he may recover for this.

Defendant says the court permitted the plaintiff to introduce evidence concerning the building of fences, the cost of maintaining them, etc. The plaintiff showed just how the road affected his use of the land; what part of the land could be used simply for pasture purposes, how it was necessary to get water for that pasturage; how it was necessary to have fences because of the road. All these were legitimate matters of inquiry. The court permitted proof in regard to the value the road had as an improvement. We have gone over all of the evidence introduced and we can see no reversible error therein. The plaintiff asked for $800 damages and the jury allowed him $400. There is ample evidence to sustain the verdict.

There are numerous specifications upon non-liability of the township such as the denying of the motion for dismissal, no proper verified claim presented, etc. Nothing further need be said on these matters, nor on the specification of error because of the "shutting out testimony showing the owner's consent to the placing of a road there." The court was right in doing this as there was no proof of agency.

It is said the court erred in instructing the jury that the establishment of the highway across the land was admitted by the pleadings and the only question for the jury to decide, is, if the owner of the land has been damaged, what compensation should he receive for his damages. There is no error in this. The defendant says the court omitted the benefits which accrued; but in this it is in error for the court in his charge to the jury read to them the law for ascertaining damages when a road is being laid out and says: "The Board in assessing the damages shall estimate the advantage and benefits the new road or alteration of an old one will confer on the claimant for the same as well as its disadvantages." In another portion the court instructs the jury that "in passing upon all of these questions of facts submitted to you, you will decide each and every fact as hereinbefore outlined to you by a full preponderance of the evidence." The court

having permitted testimony as to the advantages which accrued to the land because of the road and having stated that the township board in assessing damages are required to deduct for advantages the jury could not have been misled in any way. The court charged the jury that if the road had been legally laid out and the owner duly compensated the present owner could not recover; but that if the highway was established and the then owner of the land not compensated and that the claim for damages was assigned to the plaintiff and no settlement ever been made "by reason of the establishment of such highway across said land" the plaintiff could recover. Objection is made to a portion of the charge wherein the court stated that the township in order to escape liability for the laying out of a road should ascertain the damages, pay them or get a release of all damages from the owner and have the same filed. It is not necessary to determine whether this was strictly correct or not. The simple fact remains there was no dispute in the evidence but that the township took the land and has never settled for it. The township admits it took the land and claimed it had taken it by legal condemnation proceedings. It failed in this proof. The only issue before the court was the amount of compensation. Defendant says the court instructed the jury as to the measure of damages—the difference in value of the land before and after the construction of the highway, the value of the strip taken for a highway and the general expenses the owner was put to by reason of the highway, and says this "piles up elements." The court had charged the jury that it should take into consideration whether or not the highway cut up tillable land, and if the plaintiff suffered damages therefrom; whether or not the plaintiff was compelled to build additional fences for pasture fences and if so whether he suffered damages by reason thereof, and whether the road cut him off from his water supply. It was after this the court stated the measure of damages. The court told the jury that if the owner was not damaged in any way it was immaterial whether a settlement had been made. The court instructed the jury that where a township lays out a road on land other than on the section line the right of way must be purchased. After the case was submitted to a jury the jury returned for further instructions. The record indicates a conscientious and level-headed

jury with a fair grasp of the situation. Several questions were addressed to the court by the foreman and the court gave additional instructions in reply thereto. The court told them that in such a case as this the township board was presumed to have done its duty and was supposed to have followed the law; that before private property could be taken for road purposes it had to be purchased; that it was not necessary to pay money therefor if the owner made an agreement to give the road for nothing; that if the owner of the land told them to stay off, the township was compelled to begin condemnation proceedings, and that in that event the board would "of course have to pay what it was determined the property was worth." The court then stated that title to the land was in the plaintiff and not in the township and "you are to determine whether or not a proper assignment was made by the defendant owner of the land."

It is said the court did not give to the jury the proper measure of damages. In this case, even if the charge of the court be open to such criticism, nevertheless, it is error without prejudice. The cold facts are that eight acres of land in the center of the section owned by the plaintiff were taken—a strip four rods wide right through his farm—and this in the more level and better portion of the farm. In fact it was taken in order to avoid the difficulty of getting a road along the section line. It does not need much imagination to know that it would affect his farm and the amount allowed by the jury is so reasonable that no technical misstatement of rules could possibly affect them. The only advantage to the owner sought to be proved was the fact that he used the road himself, but the evidence shows he rarely ever uses the highway. His route is another way. The disadvantage of being required to break his pasture, to build fences, prepare another water supply, cross the road in cultivation, etc., must be evident. The jury allowed him merely $400. Under the record the jury had to allow him some damage and there is nothing to indicate that a new trial on the ground of damage alone would be in the interests of justice. An examination of the record shows a fair trial, sufficient evidence and a reasonable award.

The judgment, however, should show definitely a road now legally established with "just compensation" determined, so that the contro-

versy is settled finally. The lower court will modify its judgment accordingly and with this modification the judgment is affirmed with costs to the respondent.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL, and BURKE, JJ., concur.